UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL D. ARRINGTON,          )
                                         )
              Plaintiff,           )
          v.                        )        CIVIL ACTION
                                         )        NO. 15-10158-JGD
CAROLYN W. COLVIN, Acting      )
Commissioner of the Social Security  )
Administration,                )
                                         )
             Defendant.        )

## MEMORANDUM OF DECISION AND ORDER
## ON CROSS-MOTIONS REGARDING DENIAL OF
## SOCIAL SECURITY DISABILITY INSURANCE BENEFITS

November 3, 2016

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff, Michael D. Arrington ("Arrington"), has brought this action pro se pursuant

to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3),

in order to challenge the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his claim for Social Security Disability Insurance

("SSDI") benefits.  The matter is before the court on the "Plaintiff's Motion for Order Reversing

or Remanding the Decision of the Commissioner" (Docket No. 24), by which the plaintiff is

seeking an order reversing the Commissioner's decision and awarding him benefits or, in the

alternative, remanding the matter to the Social Security Administration for further

administrative proceedings.  It is also before the court on the "Defendant's Motion for Order

Affirming the Decision of the Commissioner" (Docket No. 31), by which the Commissioner is

seeking an order affirming her decision that the plaintiff was not disabled during the relevant

time period of March 11, 2007 through June 30, 2007, and was therefore not entitled to SSDI

benefits.  At issue is whether the Administrative Law Judge ("ALJ"), in reaching his decision that

Arrington was not disabled, erred by failing to consider medical evidence created after the date

when the plaintiff was last insured, and by failing to analyze whether the plaintiff's physical

impairments met or medically equaled certain of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 of the Social Security regulations.  Also at issue is whether the ALJ

committed reversible error in connection with his assessments of Arrington's credibility and

residual functional capacity, and in connection with his determination that Arrington was

capable of performing jobs that existed in significant numbers in the national and regional

economies.  In addition, Arrington challenges the Social Security Appeals Council's denial of his

request for review of the ALJ's decision on the grounds that the Appeals Council failed to credit

newly submitted medical evidence, and provided nothing more than "a boilerplate justification"

for its decision.

On appeal, "the court's function is a narrow one limited to determining whether there is

substantial evidence to support the [Commissioner's] findings and whether the decision

conformed to statutory requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d

315, 319 (1st Cir. 1981).  The decision must be affirmed, "even if the record arguably could

justify a different conclusion, so long as it is supported by substantial evidence."  Rodriguez

Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).  After a thorough review

of the Appeals Council's decision, the ALJ's decision and the underlying record in this case, this

court finds that the Commissioner's denial of Arrington's claim was supported by substantial evidence and must be upheld.  Therefore, and for all the reasons detailed below, the plaintiff's motion to reverse or remand is DENIED and the Commissioner's motion to affirm is ALLOWED.

## II. STATEMENT OF FACTS[1]

Arrington was born on February 4, 1960, and was 50 years old at the time he applied for SSDI.  (Tr. 312).  He left high school after the eleventh grade, but was able to earn a GED and to complete a couple of semesters at a junior college.  (Tr. 54).  During the time period from October 1980 to February 1985, Arrington served in the United States Coast Guard.  (Tr. 312, 1146).  He subsequently held a variety of jobs, including jobs as a security guard for various companies, a loss prevention specialist in a retail store, and a package delivery driver for United Parcel Service.  (Tr. 55-63, 378).  Arrington has not engaged in any significant work activity since October 2002.  (Tr. 377).  He claims that he has been disabled from working since March 10, 2007 as a result of degenerative disc disease in his back and arthritis in his left leg and knee. (Tr. 373, 377).

The record indicates that Arrington has been suffering from knee pain since 1988, when he twisted his left knee while working.  (Tr. 1146).  Although Arrington underwent arthroscopic knee surgery following the 1988 incident, he sustained additional workplace injuries to his left knee in 1994 and 1995.  (Id.).  As a result of those incidents, Arrington underwent a second arthroscopic surgery and then a left ACL reconstruction.  (Id.; Tr. 1464).

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. __."  The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 14.

Arrington did well for a couple of years following his ACL reconstruction surgery.  (Tr. 1464).  However, he subsequently developed chronic pain in his left knee, as well as feelings of weakness and occasional buckling of the knee.  (See Tr. 517, 526, 1455, 1464).  Beginning in 2007, Arrington was treated with visco supplementation injections on numerous occasions, but was unable to obtain long-term relief from his knee pain and underwent another arthroscopic surgery in 2010.  (See, e.g., Tr.555-56, 586-88, 621-23, 692-94, 1146, 1464).  The medical records show that this surgery was not helpful, and that he was given medication and a knee brace to address his continuing complaints of pain.  (Tr. 1464).

The plaintiff also has a history of chronic back pain, and testing has revealed moderate degenerative disc disease in the lumbar spine.  (Tr. 544, 742, 1540).  According to the medical records, Arrington has received medication to treat sciatica stemming from his back condition. (Tr. 1540).  However, his complaints have been focused primarily on his left knee condition.

Despite Arrington's complaints of ongoing pain, none of the treating, examining or consulting physicians have ever indicated that the plaintiff's physical impairments render him incapable of carrying out full time employment.  On the contrary, one of Arrington's orthopedic surgeons, Gary J. Kelman, M.D., repeatedly authorized the plaintiff to return to "sedentary work[2] alternating with ambulatory status 1:1; no climbing, squatting, kneeling, bending, or

---

[2]  The Social Security regulations define "sedentary work" as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a). For purposes of sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

stooping." (See, e.g. Tr. 529, 540, 547, 556, 593, 1068).  Similarly, in 2003, an independent

medical examiner found that Arrington remained capable of performing sedentary work, and in

2010, two separate State agency consultants determined that Arrington had the residual

functional capacity ("RFC") to carry out sedentary work or a limited range of light work.[3] (See

Tr. 724-31, 873, 918-25).  Arrington disagrees with these assessments, and contends that he has

been disabled from working since 2007.

### Procedural History

Arrington first sought Social Security benefits on December 31, 1997, when he filed an

application for Social Security Income benefits claiming a disability onset date of October 30,

1997. (Dec. 1; Tr. 14).  The application was denied on March 17, 1998, and Arrington did not

appeal. (Id.).  However, in January 2004, the plaintiff filed new applications for SSDI and

Supplemental Security Income ("SSI") benefits.  (Id.).  In his applications, Arrington alleged that

he had been disabled from working since October 6, 2002 due to problems with his left knee

and left leg.  See Arrington v. Soc. Sec. Admin., 358 Fed. Appx. 89, 91 (11th Cir. 2009).  The

applications were denied initially and on reconsideration.  Id.  Arrington then requested and

was granted a hearing before an ALJ, which took place on November 28, 2006 in Miami, Florida.

(Tr. 131).  On March 10, 2007, the ALJ issued a written decision denying Arrington's claims for

---

[3] The Social Security regulations define "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

benefits. (Tr. 131-38). Therein, the ALJ found that Arrington had not been under a disability, within the meaning of the Social Security Act, from October 6, 2002 through the date of her decision. (Tr. 131-38).

Arrington requested a review of the Florida ALJ's decision by the Social Security Appeals Council, and on March 13, 2008, the Appeals Council notified the plaintiff that his request had been denied. (Tr. 139-41). He then filed a civil action in the U.S. District Court for the District of Florida. Arrington, 358 Fed. Appx. at 92. In a decision on the parties' cross-motions for summary judgment in that case, the District Court found that the ALJ's denial of Arrington's claims for SSDI and SSI was supported by substantial evidence. Id. Therefore, it entered final judgment in favor of the Commissioner. Id.

Arrington appealed the adverse ruling to the Eleventh Circuit Court of Appeals. See id. at 91. On December 22, 2009, the Eleventh Circuit affirmed the District Court's decision. Id. at 96. Thus, the Appeals Court determined that the ALJ's findings were supported by substantial evidence, and that Arrington was not under a disability from October 6, 2002 through the date of the ALJ's decision on March 10, 2007. See id. Arrington does not dispute that the Eleventh Circuit's decision precludes him from claiming disability at any time prior to March 11, 2007.

The plaintiff filed another application for SSDI benefits in June 2010, claiming that he had been unable to work since March 10, 2007 due to his knee and back conditions. (Tr. 312-15, 377). This application forms the basis of the claim that is presently before this court on appeal.[4] To qualify for SSDI benefits, an individual must become disabled during the period

---

[4] Apparently, Arrington filed a new application for SSI benefits in June 2010 as well. (Tr. 43). However, that application was denied immediately on the grounds that Arrington had too many resources to qualify for the program. (Tr. 43-44). Arrington has not challenged the denial of his claim for SSI benefits

under which he is insured by the program.  See 20 C.F.R. 404.131; Fischer v. Colvin, 831 F.3d 31,

32 (1st Cir. 2016) (explaining that in order "to be eligible for benefits, [SSDI claimant] had to

demonstrate that her disability existed prior to her [date last insured]").  Because Arrington was

last insured on June 30, 2007, he had to establish that he was disabled during the time period

between March 11, 2007 and June 30, 2007.  (See Dec. 3; Tr. 16, 111).

The plaintiff's application was denied initially on August 18, 2010, and upon

reconsideration on October 28, 2010.  (Tr. 106-07, 143-49).  Subsequently, Arrington requested

a hearing before an ALJ.  (Tr. 150-51).  The request was granted and the hearing took place on

February 6, 2012 in Miami, Florida where the plaintiff was residing at the time.  (Tr. 30-40; 173-

77).  On February 21, 2012, the ALJ issued a decision in which he found that the plaintiff was

not disabled during the relevant time period.  (Tr. 250-59).  Accordingly, the ALJ denied

Arrington's 2010 claim for SSDI.  (Tr. 259).  The plaintiff immediately filed a request for review

by the Social Security Appeals Council.  (Tr. 233-35).  This time, the Appeals Council granted

Arrington's request for review, and determined that the ALJ had committed errors of law.  (Tr.

124-27).  Thus, on September 7, 2013, the Appeals Council vacated the ALJ's decision and

remanded the matter back to the ALJ for a new hearing on Arrington's SSDI claim.  (Id.).

On December 26, 2013, Arrington moved from Florida to Boston.  (Tr. 219).

Consequently, the new hearing took place in Massachusetts on June 10, 2014.  (Tr. 41-105).

Arrington, who declined representation by an attorney or professional Social Security

representative, appeared and testified at the hearing.  (Tr. 50, 53-99, 102-05).  The ALJ also

---

or attempted to exhaust his administrative remedies with respect to that claim.  (See Tr. 44).  Therefore, it is not before this court on appeal.

elicited testimony from a vocational expert ("VE"), who described the plaintiff's vocational

background based on his past work experience and responded to hypothetical questions, which

were aimed at determining whether jobs exist in the national and regional economies for an

individual with the same age, educational background, work experience and RFC as the plaintiff.

(Tr. 99-02).  On July 22, 2014, the ALJ issued a decision denying Arrington's claim for benefits.

(Tr. 11-28).

Arrington filed a request for review of the ALJ's July 22, 2014 decision by the Social

Security Appeals Council.  (Tr. 9-10).  In connection with his request for review, Arrington

submitted a "Statement in Support of Appeal Council Review" setting forth his challenges to the

ALJ's decision, as well as a letter from Patrick Barry, M.D. dated February 6, 1989, and a

document dated May 22, 2014 from the Department of Veterans Affairs.  (See Tr. 2, 4, 29, 490-

504).  On December 19, 2014, the Appeals Council notified the plaintiff that it had considered

his arguments and the materials he had submitted, but that they did not provide a basis for

changing the ALJ's decision.  (Tr. 1-2).  Accordingly, the Appeals Council denied Arrington's

request for review.  (Tr. 1).  As described below, Arrington challenges the adequacy of the

Appeals Council's decision, and argues that it should have provided a more detailed justification

for its determination.  However, this court finds that the Appeals Council had no such

obligation, and that the plaintiff's challenge to the Appeals Council's decision lacks merit.

Because the Appeals Council "found no reason under [its] rules to review the [ALJ's]

decision[,]" the ALJ's July 22, 2014 decision constituted the final decision of the Commissioner

with respect to Arrington's claim.  (Tr. 1).  Accordingly, Arrington has exhausted all of his

administrative remedies, and the matter is ripe for review pursuant to 42 U.S.C. § 405(g).

**The ALJ's Decision**

A claimant is not entitled to SSDI benefits unless he is "disabled" within the meaning of the Social Security Act, which defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  In the instant case, the ALJ concluded that Arrington "was not under a disability, as defined in the Social Security Act, at any time from March 11, 2007, the earliest allowable onset date, through June 30, 2007, the date last insured."  (Dec. Finding #11; Tr. 28 (citation omitted)).  There is no dispute that the ALJ, in reaching his decision that Arrington was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. § 404.1520.  The procedure resulted in the following analysis, which is detailed further in the ALJ's "Findings of Fact and Conclusions of Law."  (See Dec. 5-15; Tr. 18-28).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]"  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  If so, the claimant is automatically considered not disabled and the application for benefits is denied.  See id.  In this case, the ALJ found that Arrington did not engage in such activity during the relevant time period.  (Dec. Finding #2; Tr. 18).  Therefore, he proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  If not, the claimant is

deemed not to be disabled and the application for benefits is denied.  See Seavey, 276 F.3d at

5.  Here, the ALJ determined that Arrington suffered from the following severe impairments

during the period from March 11, 2007 through June 30, 2007:

> left knee pain status post arthroscopy (1988), status post arthroscopy
> with resection of partial ACL tear and partial medial meniscectomy
> (1994), and status post arthroscopy with bone graft reconstruction of ACL
> (1995); low back pain due to mild spondylosis with moderate degenera-
> tive disc disease at L5-S1 (per MRI in May 2006).

(Dec. Finding #3; Tr. 18 (citation omitted)).  While the ALJ acknowledged Arrington's allegation

that he had also been suffering from a mental impairment since 2007, the ALJ found that there

was no objective evidence to support such a claim.  (Dec. 6; Tr. 19).   Accordingly, the ALJ found

that the plaintiff had not established the presence of a severe mental impairment on or before

the date last insured.  (See Dec. 5-6; Tr. 18-19).

Because the ALJ determined that Arrington had impairments that were severe, he

proceeded to step three in the sequential analysis.  The third inquiry is whether the claimant

has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the

Social Security regulations.  See Seavey, 276 F. 3d at 5; 20 C.F.R. § 404.1520(d).  At this step, the

ALJ concluded that Arrington's impairments, either alone or in combination, did not meet or

medically equal any of the listed impairments.  The parties dispute whether this finding was

supported by substantial evidence.

In connection with his finding at step three, the ALJ considered whether Arrington's

impairments met or equaled Listing 1.02 regarding major dysfunction of a joint, or Listing 1.04

concerning spinal impairments.  (Dec. 6; Tr. 19).  The ALJ explained that none of the treating or

examining physicians had presented findings that were equivalent in severity to these or any

other listed impairment.  (Id.).  He further stated that he had considered the opinions of the

State agency consultants who had evaluated this issue at the initial and reconsideration levels

of the administrative review process and had determined that Arrington's impairments did not

meet or medically equal any of the listed impairments.  (Id.).  As described below, this court

finds that there is substantial support for the ALJ's decision on this issue.

After finding that Arrington's impairments did not meet or medically equal any of the

listed impairments, the ALJ proceeded to step four in his analysis.  The fourth inquiry asks

whether "the applicant's 'residual functional capacity' is such that he or she can still perform

past relevant work[.]"  Seavey, 276 F.3d at 5.  Thus, in order to answer this question, the ALJ

must first determine the claimant's RFC.  In the instant case, the ALJ assessed Arrington's RFC as

follows:

> After careful consideration of the entire record, I find that, through the
> date last insured, the claimant had the residual functional capacity to lift
> and/or carry 20 pounds occasionally and 10 pounds frequently.  He was
> able to stand and/or walk for 2 hours over an 8-hour workday.  He was
> able to sit for 6 hours over an 8-hour workday.  He could occasionally
> climb, balance, stoop, kneel, crouch or crawl.  He needed to avoid
> concentrated exposure to extreme cold, humidity, vibration and hazards.

(Dec. Finding #5; Tr. 19).  Arrington argues that this finding was erroneous because the ALJ did

not properly evaluate the credibility of Arrington's statements regarding the nature and extent

of his pain and other symptoms, and because the ALJ adopted the opinion of a State agency

consultant who did not have an opportunity to review the full medical record instead of

adopting the opinions of Arrington's treating physicians.  As explained in detail below, this court

finds that the ALJ's decision on these matters was appropriate and does not warrant reversal or

a remand to the Social Security Administration.

In reaching his conclusion regarding Arrington's RFC, the ALJ followed well-established procedures.  Thus, the ALJ first considered the plaintiff's symptoms and the extent to which those symptoms were consistent with the objective medical evidence and other evidence of record.  (Dec. 6-12; Tr. 19-25).  Because the ALJ determined that Arrington's medically deter-minable impairments could reasonably be expected to cause the plaintiff's alleged symptoms, he went on to determine whether the plaintiff's subjective statements about his pain and other symptoms were credible in light of the record as a whole.  (Dec. 12-13; Tr. 25-26).  Accordingly, the ALJ considered the plaintiff's testimony at the hearing, the objective medical evidence and the available opinion evidence.  (See Dec. 12-13; Tr. 25-26).  The ALJ concluded that in this case, "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible[,]" to the extent Arrington testified to greater limitations than those determined by the ALJ in his assessment of the plaintiff's RFC.  (Dec. 12; Tr. 25).

After explaining the basis for his RFC determination, including the basis for his assessment of Arrington's credibility, the ALJ concluded that Arrington was unable to perform his past relevant work as a loss prevention security guard or a driver for United Parcel Service.  (Dec. 13; Tr. 26).  Consequently, he reached the fifth and last step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work.  See Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  Id.  At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey, 276 F.3d at 5.  Here, the ALJ relied on the VE's testimony to conclude that Arrington was capable of performing jobs that exist in significant numbers in

the national economy, including the unskilled, sedentary jobs of a surveillance system monitor, a food order clerk and a circuit board inspector.  (Dec. 14-15; Tr. 27-28).   Therefore, the ALJ found that Arrington was not disabled under the Social Security Act on or before his date last insured.  (Dec. 15; Tr. 28).  Arrington challenges the ALJ's reliance on the VE's testimony, as well as his conclusion that the plaintiff could perform other work.  For the reasons discussed below, this court finds that Arrington's challenge to the ALJ's finding at step five of the disability analysis is insufficient to warrant relief in his favor, and that the Commissioner's decision to deny his claim for SSDI benefits must be affirmed.

Additional factual details relevant to this court's analysis are described below where appropriate.

## III.  ANALYSIS

### A.    Standard of Review

In this action, Arrington is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act").  The Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action …. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ….

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.

Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955

F.2d 765, 769 (1st Cir. 1991).

As the First Circuit has explained:

> In reviewing the record for substantial evidence, we are to keep in mind
> that "issues of credibility and the drawing of permissible inference from
> evidentiary facts are the prime responsibility of the [Commissioner]."
> The [Commissioner] may (and, under [her] regulations, must) take
> medical evidence. But the resolution of conflicts in the evidence and the
> determination of the ultimate question of disability is for [her], not for
> the doctors or for the courts. We must uphold the [Commissioner's]
> findings in this case if a reasonable mind, reviewing the record as a
> whole, could accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez

v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Therefore, "the court's

function is a narrow one limited to determining whether there is substantial evidence to

support the [Commissioner's] findings and whether the decision conformed to statutory

requirements." Geoffroy, 663 F.2d at 319. The Commissioner's decision must be affirmed,

"even if the record arguably could justify a different conclusion, so long as it is supported by

substantial evidence." Rodriguez Pagan, 819 F.2d at 3.

"Even in the presence of substantial evidence, however, the Court may review conclu-

sions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts.'" Musto v. Halter, 135 F. Supp. 2d 220, 225

(D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (inter-

nal citations omitted). "Thus, if the ALJ made a legal or factual error, the court may reverse or

14

remand such decision to consider new, material evidence or to apply the correct legal standard." Ross v. Astrue, C.A. No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

**B.      Plaintiff's Challenge to the Appeals Council's Decision**

Arrington first takes issue with the Appeals Council's December 19, 2014 decision to deny his request for review of the ALJ's decision denying his claim for SSDI benefits. (Pl. Mem. (Docket No. 25) at 7-11). Specifically, Arrington contends that the Appeals Council erred by offering nothing more "than a boilerplate justification" for its decision despite acknowledging that it was considering additional evidence. (See id. at 8, 10-11). He further argues that the Appeals Council's failure to find a basis for changing the ALJ's decision in the newly submitted material, as well as its failure to find fault with the ALJ's handling of medical evidence generated after the date last insured, amounted to an egregious error or a mistake of law. (Id. at 9-10, 15). This court finds that the plaintiff' challenge to the Appeals Council's decision is without merit.

**Appeals Council's Failure to Provide a Detailed Basis for its Decision**

In connection with its decision to deny Arrington's request for review of the ALJ's decision, the Appeals Council explained that it had considered the arguments set forth in the plaintiff's "Statement in Support of Appeal Council Review," but determined that those arguments provided no basis for changing the ALJ's decision. (See Tr. 2, 4, 490-504). It further explained that it had considered the following evidence that Arrington had submitted to the Appeals Council along with his request for review:

> We looked at evidence from Patrick Barry, M.D., and the Boston [VA Medical Center], dated February 6, 1989 and May 22, 2014. We found

> this information does not show a reasonable probability that, either alone or when considered with the other evidence of record, would change the outcome of the [ALJ's] decision.
>
> We also looked at evidence from Boston VAMC dated May 22, 2014. However, this document is an exact copy of Exhibit 37F, page 24.

(Tr. 2 (citation omitted)).  This court finds that the Appeals Council's failure to offer a more detailed explanation for its decision was not erroneous.

As the First Circuit explained in Mills v. Apfel, 244 F.3d 1 (1st Cir. 2001), "the Appeals Council need not and often does not give reasons" for denying a request for review.  Mills, 244 F.3d at 5.  Consequently, "an Appeals Council denial of review, without a stated reason, is effectively unreviewable."  Robbins v. Astrue, Civil No. 09-cv-343-JD, 2010 WL 3168306, at *3 (D.N.H. Aug. 9, 2010).  Because the Appeals Council had no obligation to articulate its reasons for denying the plaintiff's request for review in this case, the plaintiff's characterization of its decision as "boilerplate" provides no basis for relief in his favor.

### Failure to Establish Egregious Error or Mistake of Law

The plaintiff's assertion that the Appeals Council committed an egregious error or mistake of law is similarly unconvincing.  "Generally, the discretionary decision of the [Appeals Council] to deny a request for review of an ALJ's decision is not reviewable as the 'reversible error by an ALJ can be remedied by the Court regardless of what the Appeals Council did or did not do.'"  Moore v. Astrue, Civil Action No. 11-cv-11936-DJC, 2013 WL 812486, at *14 (D. Mass. Mar. 2, 2013) (quoting Marmol v. Astrue, No. 07-CV-297-S, 2008 WL 2831256, at *9 (D.R.I. July 22, 2008)).  Nevertheless, the First Circuit has held that an Appeals Council decision may be reviewable "where new evidence is tendered after the ALJ decision."  Mills, 244 F.3d at 5.  In such circumstances, the Appeals Council's refusal to review the ALJ "may be reviewable [by the

court] to the extent that it rests on an explicit mistake of law or other egregious error." Id. However, "[t]his avenue of review has been described as 'exceedingly narrow.'" Kirby v. Astrue, No. C.A. 07-422A, 2008 WL 2787926, at *10 (D.R.I. July 17, 2008) (quoting Harrison v. Barnhart, C.A. No. 06-30005-KPN, 2006 WL 3898287, at *2 (D. Mass. Dec. 22, 2006)). Thus, a claimant can only prevail on a challenge to such a decision if he can show "that the Appeals Council was 'egregiously mistaken' in its decision to deny [the] Plaintiff's request for review" after receiving the new evidence. Id. at *11.

In the instant case, Arrington contends that the Appeals Council committed an egregious error when it determined that the evidence he submitted directly to the Appeals Council provided no basis for changing the ALJ's decision. (Pl. Mem. at 9-10). However, the record does not support the plaintiff's assertion. As an initial matter, Arrington does not dispute the Appeals Council's description of the evidence from the Boston VAMC dated May 22, 2014 as "an exact copy" of an exhibit that was contained in the record before the ALJ. (See Tr. 2). Accordingly, Arrington cannot show that the Appeals Counsel was mistaken, much less egregiously so, when it determined that "this information does not show a reasonable probability that, either alone or when considered with the other evidence of record, would change the outcome of the [ALJ's] decision." (Tr. 2 (citation omitted)). See Moore, 2013 WL 812486, at *13-14 (finding no egregious error where new evidence submitted to Appeals Council was cumulative of evidence before the ALJ). The remaining piece of evidence also provides no support for the plaintiff's position. That evidence consists of a letter from Patrick Barry, M.D. dated February 6, 1989. (See Tr. 29). Therein, Dr. Barry described the status of Arrington's medical condition as of early February 1989, more than 18 years prior to the alleged

onset of his disability and more than 13 years before Arrington stopped working.  (Id.).  In his

letter, Dr. Barry stated in significant part:

> [Arrington] is doing surprisingly well, despite the extent of [his] impair-
> ment, and is symptom free.  He has good strength, good mobility, with
> no loss of motion, and you can barely detect on the examination that his
> anterior cruciate ligament is out.  I have put no restrictions on him.

(Tr. 29).  Thus, the letter supports the Appeals Council's decision to deny Arrington's request for

review.

### Alleged Failure to Credit More Recent Medical Evidence

The plaintiff also urges the court to reverse the Appeals Council's decision based on the

ALJ's alleged failure to give "retrospective consideration" to medical evidence that was created

after the date when he was last insured.  (Pl. Mem. at 15).  Although Arrington raises this claim

as part of his challenge to the Appeals Council's decision, it is, in fact, directed at the ALJ's

actions and is unrelated to any new evidence that was presented to the Appeals Council.

Arrington has not cited any authority that would render the Appeals Council's decision

reviewable on these grounds.  See Mills, 244 F.3d at 5-6 (explaining that review of an Appeals

Council decision makes sense where new evidence is submitted after the ALJ has issued a

decision, but that "[i]n most other situations, a mistake by the ALJ that is otherwise correctable

by a court can be addressed on judicial review *regardless* of any denial of review by the Appeals

Council").  Therefore, he has not shown that he is entitled to relief on this basis.

In any event, the record does not support the plaintiff's claim.  Rather, the record

establishes that the ALJ did consider all of the evidence of record, including evidence that was

created after June 30, 2007, the date last insured.  For example, but without limitation, at step

two in his disability analysis, the ALJ cited medical records from 2007 through 2014.  (Dec. 5-6;

Tr. 18-19).  He also stated that he had considered "the entire record" in assessing the plaintiff's

RFC, and he described the substance of the medical evidence spanning the time period from

February 1994 through November 29, 2011, more than 4 years after the expiration of

Arrington's insured status.  (Dec. 6-12; Tr. 19-25).  Where, as in this case, the time period at

issue is narrow, "an ALJ may use evidence from the surrounding time periods to draw

conclusions regarding the relevant time period."  Resendes v. Astrue, 780 F. Supp. 2d 125, 140

(D. Mass. 2011).  Because the record establishes that the ALJ reviewed the evidence from the

surrounding time periods, and did not fail to consider medical evidence that was generated

after the date last insured, Arrington has not shown that he is entitled to reversal or a remand

to the Social Security Administration on this claim.

### C. Plaintiff's Challenge to the ALJ's Decision

The plaintiff has also raised several challenges to the ALJ's analysis.  As detailed herein,

this court finds that the ALJ's decision was supported by substantial evidence and must be

upheld.

### 1. Absence of a Listed Impairment

The plaintiff argues that the Commissioner's decision must be reversed because the ALJ

failed to evaluate the evidence in order to determine whether Arrington met or medically

equaled Listing 1.02 entitled "Major dysfunction of a joint(s)" or Listing 1.04 entitled "Disorders

of the spine."  (Pl. Mem. at 15-23).  At step three in his analysis, the ALJ explained that he had

considered whether Arrington met or medically equaled these Listings, but had found that the

plaintiff was not disabled per se under the relevant criteria.  Specifically, as the ALJ stated in his

decision:

> I have considered whether the claimant meets or equals listing 1.02
> regarding major dysfunction of a joint, or listing 1.04, regarding spinal
> impairments.  However, no treating or examining physician has proffered
> findings that are equivalent in severity to the criteria of these or any
> other listed impairment.  In reaching this conclusion, I have considered
> the opinions of the state agency medical consultants who evaluated this
> issue at the initial and reconsideration levels of the administrative review
> process and reached the same conclusion.

(Dec. 6; Tr. 19 (citations omitted)).  Nevertheless, Arrington contends that "the ALJ erred by failing to analyze Claimant's physical condition in relation to the Listed Impairments."  (Pl. Mem. at 18).  For the reasons that follow, this court finds that no error occurred, and that the ALJ's finding at this stage of the analysis was supported by substantial evidence in the record.

At step three, "it is the claimant's burden to show that he has an impairment or impairments which meets or equals a listed impairment in Appendix 1" of the Social Security regulations.  Torres v. Sec'y of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989).  If the claimant makes such a showing, "the Social Security Administration will find the claimant disabled, without regard to the claimant's age, education, or work experience."  Arrington, 358 Fed. Appx. at 93.  "An impairment meets the listings only when it manifests the specific findings described in the set of medical criteria for a particular listed impairment."  Martinez Nater v. Sec'y of Health & Human Servs., 933 F.2d 76, 77 (1991) (quotations and citation omitted).  "An impairment equals a listed impairment when the set of symptoms, signs and laboratory findings in the medical evidence supporting the claimant are at least equivalent in severity to the set of medical findings for the listed impairment."  Id. (quotations and citation omitted).

"Courts differ in the extent to which at step three the ALJ must discuss whether the claimant's severe conditions medically equaled a listing[.]"  Medina-Augusto v. Comm'r of Soc. Sec., Civil No. 14-1431 (BJM), 2016 WL 782013, at *8 (D.P.R. Feb. 29, 2016) (slip op.).  The First

Circuit appears not to have addressed this issue, and the courts in this district have not yet reached a consensus.  Compare Arsenault v. Astrue, 937 F. Supp.2d 187, 189 (D. Mass. 2013) (remanding case so that ALJ could evaluate the evidence, compare it to the relevant Listing, and provide an explanation for his conclusion at step three) with Rivera v.Barnhart, No. Civ. A. 04-30131-KPN, 2005 WL 670538, at *5 (D. Mass. Mar. 14, 2005) ("the failure – if failure it is – to make specific findings as to whether a claimant's impairment meets the requirements of a listed impairment is an insufficient reason in and of itself for setting aside an administrative finding").  Nevertheless, the First Circuit has held that "a remand is not essential if it will amount to no more than an empty exercise."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000).  Because this court concludes that a remand for further explanation or analysis at step three would amount to nothing more than an empty exercise, Arrington has not shown that the ALJ's failure to compare his impairments to Listings 1.02 and 1.04 constitutes grounds for a ruling in his favor.

### Listing 1.02 Regarding Major Dysfunction of a Joint

Listing 1.02 provides:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or

> B. Involvement of one major peripheral joint in each upper extremity
> (i.e., shoulder, elbow, or wrist-hand), *resulting in inability to perform fine*
> *and gross movements effectively, as defined in 1.00B2c.*

20 C.F.R.  Pt. 404, Subpt. P, App. 1 § 1.02 (emphasis added).  Therefore, in order to meet the

criteria of Listing 1.02, the evidence must show that the claimant is incapable of ambulating

effectively or is incapable of performing fine and gross movements effectively.

Having the "inability to ambulate effectively" is further defined in 1.00B2b as "having

insufficient lower extremity functioning . . . to permit independent ambulation without the use

of a hand-held assistive device(s) . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b).  Here,

there is no evidence that Arrington needed an assistive device at any time during the relevant

time period.  In fact, Arrington's medical records from July 9, 2007, just nine days after the date

last insured, show that the plaintiff was able to walk "with a slight left antalgic gait[,]" could

"arise on his heels and toes without difficulty[,] and could "semi-squat and arise with left knee

pain and a feeling of weakness in the left lower extremity."  (Tr. 546).

Moreover, there is no evidence in the instant case that Arrington's impairments

impacted his upper extremities or resulted in limitations on his ability to perform fine and gross

movements during the relevant time period.  On the contrary, Arrington's medical records

show that the plaintiff had no limitations with respect to his ability to use his hands, and that he

had normal sensation, reflexes, coordination and motor ability in his bilateral upper

extremities.  (See, e.g., Tr. 537, 579).  Therefore, Arrington has not met his burden of proving an

impairment that met listing 1.02.

Arrington's objection must fail for the additional reason that two State agency consul-

tants opined that during the relevant time period, Arrington retained the capacity to perform

sedentary work or a limited rage of light work.  (See Tr. 724-31, 918-25).  One of those

consultants, Minal Krishnamurthy, M.D., is a physician who signed the Disability Determination

and Transmittal form denying Arrington's claim upon reconsideration.  (Tr. 107).  The ALJ relied

on Dr. Krishnamurthy's opinions to support his determination that Arrington's impairments did

not meet or medically equal the severity of a listed impairment.  (Dec. 6; Tr. 19).  Under the

applicable case law, he was entitled to do so.  See Scheck v. Barnhart, 357 F.3d 697, 700 (7th

Cir. 2004) (Disability Determination and Transmittal forms completed by state agency

physicians who determined that claimant was not disabled at the initial and reconsideration

levels of review provided substantial evidence for ALJ's determination that claimant's back

condition was not equivalent to a listed impairment); Albidreez v. Astrue, 504 F. Supp. 2d 814,

820 (C.D. Cal. 2007) (finding that "the signed written opinions of the state agency physicians

provide[d] a sufficient basis for the ALJ's equivalence determination," and that substantial

evidence supported ALJ's finding that plaintiff did not meet or equal a listed impairment

(quotations, punctuation and citation omitted)); Scarafone v. Colvin, Civil Action No. 13-10477-

RWZ, 2015 WL 71490, at *4 (D. Mass. Jan. 6, 2015) (finding that opinion of state agency medical

consultants, who evaluated whether plaintiff's impairments met or medically equaled a Listing

at the initial and reconsideration levels of the administrative review process, provided

substantial evidence for ALJ's finding at step three).

The plaintiff has highlighted portions of the medical record in an effort to show that his

left knee condition meets or medically equals Listing 1.02.  (See Pl. Mem. at 19-23).  However,

none of the cited evidence is sufficient to undermine the ALJ's finding on this issue.  First of all,

none of the cited evidence pertains to the relevant time period of March 11, 2007 through June

30, 2007.  (Id.).  Nor does it pertain to any surrounding time periods or purport to shed light on

the status of the plaintiff's knee condition as of his date last insured.  (Id.).  Secondly, none of

the evidence on which Arrington relies indicates that he required an assistive device or other-

wise addresses his ability to ambulate effectively, and none of the evidence suggests that his

physicians considered him to be disabled from working as a result of his knee impairment.  (See

id.).  Therefore, this court concludes that the ALJ's finding with respect to Listing 1.02 must be

upheld on appeal.

### Listing 1.04 Regarding Disorders of the Spine

In order to be considered presumptively disabled under Listing 1.04 pertaining to

disorders of the spine, the claimant must present evidence of "nerve root compression, spinal

arachnoiditis, or lumbar spinal stenosis."  Arrington, 358 Fed. Appx. at 94.  Arrington has not

pointed to any evidence showing that he was suffering from any of these conditions prior to his

date last insured, and records from surrounding time periods do not indicate the presence of

nerve root compression, arachnoiditis or lumbar spinal stenosis.  (See Pl. Mem. at 19-22).  For

instance, a Radiology Report dated May 26, 2006 revealed only "[m]oderate degenerative disc

disease present at L5/S1 associated with mild spondylosis and mild degenerative changes of the

apophyseal joints."  (Tr. 544).  Similarly, a nursing outpatient note dated April 12, 2007

indicated that Arrington had been complaining of sharp low back pain for over a month, but

had been taking "Ibuprofen for the pain with relief."  (Tr. 827-28).  This conclusion is further

supported by Dr. Krishnamurthy's assessment, upon reconsideration, that Arrington was not

disabled per se.  (See Tr. 107).  Accordingly, the ALJ's determination that the plaintiff did not

meet or medically equal Listing 1.04 is entitled to deference.  See Arrington, 358 Fed. Appx. at

94-95 (holding that ALJ properly found that Arrington's impairments did not meet or medically

equal the Listing for disorders of the spine where Arrington failed to point to evidence showing

"that he had nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis," and

medical evidence predating alleged onset of disability did not suggest otherwise); Perez v.

Astrue, Civil Action No. 11-30074-KPN, 2011 WL 6132547, at *3 (D. Mass. Dec. 7, 2011)

(plaintiff's failure to point to evidence in the record indicating that his impairments met listing

level severity was fatal to his claim that the ALJ erred at step three in the disability analysis).

### 2.      Adequacy of the ALJ's Credibility Assessment

The plaintiff's next challenge to the ALJ's decision concerns the ALJ's finding regarding

Arrington's credibility.  In connection with his RFC assessment, the ALJ considered the plaintiff's

hearing testimony, including his claim that he was unable to work due to chronic left knee and

lower back pain.  (Dec. 12; Tr. 25).  Although the ALJ found that Arrington's impairments "could

reasonably be expected to cause the alleged symptoms[,]" he determined that "the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms [were]

not entirely credible for the reasons explained in [his] decision."  (Id.).  The plaintiff argues that

this finding was not based on substantial evidence because the ALJ failed to cite any medical

authority for his conclusion, his assessment was inconsistent with certain evidence in the

record, the ALJ failed to mention how he applied the so-called "Avery factors," and the ALJ

failed to adequately consider the plaintiff's activities of daily living.  (Pl. Mem. at 23-29).

Generally, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his

demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to

deference, especially when supported by specific findings."  Frustaglia v. Sec'y of Health &

Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).  This court finds that there is substantial evidence to support the ALJ's credibility determination in this case.

## The ALJ's Decision

The ALJ determined that Arrington's testimony regarding his physical limitations was not credible to the extent the plaintiff testified to greater limitations than those described by the ALJ in his assessment of Arrington's physical RFC.  (Dec. 13; Tr. 26).  As the ALJ reasoned in his decision:

> First, such limitations are inconsistent with the medical record for the period on or before the date last insured, June 30, 2007.  The claimant did have significant limitations resulting from his left knee impairment, but only mild to moderate degenerative disc disease.  (Exhibit 4F).  On July 9, 2007, the claimant ambulated with a slight left antalgic gait.  He could arise on his heels and toes without difficulty and semi-squat and arise with left knee pain and a feeling of weakness in the left lower extremity.  The claimant could actively straight-leg raise without extensor lag.  There was no instability to anterior/posterior or varus/valgus manual stress testing.  Based upon this examination, Dr. Kelman advised the claimant that he could work with restrictions of sedentary work alternating with ambulatory status 1:1; no climbing, squatting, kneeling, bending, or stooping.  (Exhibits 4F, 8F).

(Id.).  The ALJ further noted that Arrington had provided extensive records of his medical treatment, but that the majority of those records reflected treatment after 2010.  (Id.).  Thus, the ALJ concluded that the plaintiff "has not provided any objective medical evidence to support a finding that he was unable to perform sedentary work activities as of his date last insured."  (Id.).

## Arrington's Challenges to the Credibility Assessment

The plaintiff first asserts that the ALJ's decision was erroneous because he cited no medical authority in support of his assessment.  However, this argument reflects an inaccurate

reading of the record.  As indicated in his explanation for his credibility assessment, the ALJ

relied on the May 26, 2006 Radiology Report describing x-rays of Arrington's lumbosacral spine

to support his conclusion that the plaintiff had no more than moderate degenerative disc

disease prior to his date last insured.  (See Tr. 544).  He also relied on Dr. Kelman's report of

Arrington's office visit on July 9, 2007 to determine that Arrington retained the capacity to

perform sedentary work during the relevant time period, and that his claims of disabling left

knee and lower back pain were inconsistent with the medical records.  (See Tr. 546-47, 927-28).

To the extent Arrington contends that the record contains conflicting evidence

regarding the extent of his physical limitations, that argument too is insufficient to undermine

the ALJ's credibility determination.  It is the responsibility of the ALJ, and not the court, "to find

facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of

evidence."  Teague v. Colvin, 151 F. Supp. 3d 223, 226 (D. Mass. 2015).  Moreover, in this case,

no medical source opined that Arrington was incapable of working during the time period from

March 11, 2007 through the date last insured, and the plaintiff has not challenged the ALJ's

finding that all of the available medical source opinions "are consistent in regards to the

claimant being limited to sedentary work."  (See Dec. 13; Tr. 26).  Therefore, the record

contains substantial support for the ALJ's conclusion that Arrington's claim of disabling pain was

not entirely credible.

The plaintiff also argues that the ALJ erred by failing to explain how he applied the so-

called "Avery factors" to the credibility analysis, and by failing to discuss the plaintiff's activities

of daily living in his written decision.  (See Pl. Mem. at 25, 27-28).  Again, his argument is

unpersuasive.  "The regulations recognize that a person's symptoms may be more severe than

the objective medical evidence suggests.  Therefore, the regulations provide six factors (known as the Avery factors) that will be considered when the applicant alleges pain" or other symptoms.[5]  Makuch v. Halter, 170 F. Supp.2d 117, 126 (D. Mass. 2001) (internal punctuation, emphasis, and citation omitted).  These are:

> (1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) any precipitating or aggravating factors; (3) the type, dosage, effectiveness, and adverse side effects of any pain medication; (4) any treatment, other than medication, for the relief of pain; (5) any functional restrictions; and (6) the claimant's daily activities.

Rohrberg v. Apfel, 26 F. Supp.2d 303, 308 (D. Mass. 1998) (citing Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986)).  While the ALJ must *consider* each of these factors, there is no requirement that he make specific findings regarding each of the factors in his written decision.  See 20 C.F.R. § 404.1529(c)(3) (listing *Avery* factors as factors that the Commissioner "will consider" in evaluating subjective complaints of pain and other symptoms).  See also Rand v. Barnhart, 357 F. Supp.2d 361, 368 (D. Mass. 2005) ("While it may be argued that it would have been more helpful for the hearing officer explicitly to outline the *Avery* factors in making his credibility determination, it is sufficiently clear from the record that he thoroughly questioned [the claimant] according to those guidelines at the hearing").  Here, the ALJ satisfied his obligation to consider the relevant factors.

During the hearing, and again in his written decision, the ALJ considered Arrington's statements regarding the nature, intensity, persistence and limiting effects of his pain and other symptoms.  For example, but without limitation, the ALJ considered Arrington's testimony

---

[5]  "While the *Avery* factors only discuss 'pain,' Social Security Ruling 96-7p makes it clear that the factors also apply to 'other symptoms.'"  Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 n.3 (D. Mass. 2010) (quoting SSR 96-7p, 1996 WL 374186, at *3).

regarding his back and left knee pain, including Arrington's comments regarding the nature and intensity of his pain, as well as his description of the physical limitations he experiences as a result of his symptoms.  (Dec. 12; Tr. 25, 69-79, 84-91).  Additionally, the ALJ considered Arrington's testimony regarding the type and effectiveness of his treatment, including his medications, his receipt of injections in his knee, and his consistent use of a brace.  (Dec. 12; Tr. 25, 72-83).  Although the ALJ did not address Arrington's daily activities in his written decision, he specifically questioned the plaintiff about those activities during the hearing.  (Tr. 96-97).

In addition to eliciting testimony on all of these points, the ALJ reviewed Arrington's medical records in detail, and considered the statements that the plaintiff had made to his treating physicians and other medical professionals.  (See Dec. 7-12; Tr. 20-25).  Accordingly, the ALJ considered Arrington's complaints of pain in his knee and lower back, as well as his complaints of swelling and buckling of his knee.  (See id.).  He also considered the treatment that Arrington received from his medical providers, and the effect that the treatment had on Arrington's symptoms.  (See id.).  The record thus shows that the ALJ thoroughly considered the relevant factors in connection with his assessment of Arrington's credibility, and that he carried out his obligation to "evaluate the credibility of the claimant's subjective complaints of disabling limitations based on consideration of the entire record[.]"  Larlee v. Astrue, 694 F. Supp.2d 80, 85 (D. Mass. 2010).  Accordingly, this court finds that the ALJ's credibility determination must be upheld on appeal.

### 3.      The ALJ's Handling of the Opinion Evidence

Arrington next contends that the ALJ committed reversible error by relying on the opinion of the State agency physician, Dr. Krishnamurthy, in support of his finding regarding the

plaintiff's RFC.  Specifically, the plaintiff argues that it was improper for the ALJ to credit Dr.

Krishnamurthy's opinion because it was based on only a partial review of the record.  (Pl. Mem.

at 35-37).  He also argues that it was improper for the ALJ to credit Dr. Krishnamurthy's

assessment of his physical RFC over the assessments of his treating physician, Dr. Kelman, and

Rowland W. Pritchard, M.D., an independent medical examiner who evaluated the plaintiff in

2003.  (Id. at 37-38).  Finally, the plaintiff argues that the ALJ was remiss in failing to re-contact

Dr. Kelman in order to seek additional information regarding Arrington's postural limitations.

(Id. at 31-34).  For the reasons that follow, this court concludes that the ALJ's handling of these

matters was appropriate.

### The ALJ's Reliance on Dr. Krishnamurthy's Assessment

Dr. Krishnamurthy completed a physical RFC assessment of the plaintiff on October 27,

2010 based on a review of the available medical records.  (Tr. 918-25).  Therein, Dr.

Krishnamurthy determined that as of the date last insured, Arrington retained the physical

capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to stand and/or

walk at least 2 hours in an 8-hour workday, and to sit for about 6 hours in an 8-hour workday.

(Tr. 919).  She also determined, with respect to postural maneuvers, that Arrington could never

climb ladders, rope or scaffolds, but that he had the capacity to climb ramps or stairs, and to

balance, stoop, kneel, crouch or crawl occasionally.  (Tr. 920).  Furthermore, Dr. Krishnamurthy

recommended that the plaintiff avoid concentrated exposure to extreme cold, humidity and

vibration, and avoid even moderate exposure to hazards.  (Tr. 922).  However, she found that

he had no manipulative, visual or communicative limitations, and no restrictions with respect to

pushing and/or pulling, extreme heat, wetness, noise and fumes.  (Tr. 919, 921-22).

In his written decision, the ALJ explained that he had given "great weight" to Dr. Krishnamurthy's assessment because it was "consistent with the record as a whole for the period on or before the date last insured" with the exception that the record "supports a need to avoid concentrated exposure to hazards rather than a more restrictive limitation to 'moderate' exposure." (Dec. 12; Tr. 25). Accordingly, he adopted Dr. Krishnamurthy's assessment of Arrington's RFC, except that he found that Arrington needed to avoid concentrated exposure to hazards. (See Dec. Finding #5; Tr. 19).

The plaintiff argues that the ALJ erred in adopting Dr. Krishnamurthy's opinion because it did not address the medical evidence that was generated after the date of her assessment, including medical evidence generated during the time period from November 2010 to the date of the ALJ's decision on July 22, 2014. (Pl. Mem. at 35). The First Circuit has held that the opinion of a non-examining consultant cannot serve as substantial evidence if it is "based on a significantly incomplete record, *and* it [is] not well justified because it fails to account for a deterioration in the claimant's condition. Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam) (emphasis added). "On the other hand, the ALJ may rely on [such] evidence when the information in that evidence remains accurate." Abubakar v. Astrue, C.A. No. 1:11-cv-10456-DJC, 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012). In this case, Dr. Krishnamurthy completed her assessment more than three years after the expiration of Arrington's insured status. Accordingly, she was able to consider all of the medical records relating to the period under review, as well as all of the records from the time periods surrounding the period under review. There is no requirement that she consider medical

evidence even more remote from the relevant time period.  Her assessment thus provides

substantial support for the ALJ's RFC determination.

### Failure to Adopt Opinions of Drs. Pritchard and Kelman

The plaintiff also challenges the ALJ's decision to adopt Dr. Krishnamurthy's opinion over

the opinions of Dr. Pritchard and Dr. Kelman on the grounds that it violated the treating

physician rule.  (Pl. Mem. at 31-32, 37-38).  He further contends that the ALJ failed to fulfill an

obligation to re-contact Dr. Kelman in order clarify the basis for his opinion.  (Id. at 31-34).  For

the reasons that follow, this court finds that the ALJ's handling of these matters was proper.

### The Treating Source Rule

The Social Security regulations provide that "the hearing officer should 'generally' give

more weight to a source who has treated the claimant as a patient or examined the person."

Monroe v. Barnhart, 471 F. Supp. 2d 203, 211 (D. Mass. 2007) (quoting 20 C.F.R. §

404.1527(d)(1)-(2)).[6]  This is because such sources

> are likely to be the medical professionals most able to provide a detailed,
> longitudinal picture of [the claimant's] medical impairment(s) and may
> bring a unique perspective to the medical evidence that cannot be
> obtained from the objective medical findings alone or from reports of
> individual examinations, such as consultative examinations or brief
> hospitalizations.

20 C.F.R. § 404.1527(c)(2).  Thus, under the treating source rule, "[c]ontrolling weight will be

given to a treating physician's opinion on the nature and severity of a claimant's impairments if

the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

---

[6]  The Social Security regulations were revised in 2012.  The provisions pertaining to the weight given to treating source opinions can now be found at 20 C.F.R. §§ 404.1527(c)(1)-(2).

techniques and is not inconsistent with the other substantial evidence' in the record." <u>Bourinot</u>

<u>v. Colvin</u>, 95 F. Supp. 3d 161, 175 (D. Mass. 2015) (quoting 20 C.F.R. §§ 404.1527(c)(2) and

416.927(c)(2)).

The general rule regarding treating source opinions does not mean that the ALJ is always

required to adopt those opinions or even to give them more weight than opinions from non-

treating sources.  Under the regulations, "[c]ontrolling weight *may not* be given to a treating

source's medical opinion unless the opinion is well-supported by medically acceptable clinical

and laboratory diagnostic techniques."  SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996)

(emphasis added).  Moreover, "[t]he law in this circuit does not require the ALJ to give greater

weight to the opinions of treating physicians" even when there is support for those opinions in

the medical records.  <u>Arruda v. Barnhart</u>, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (quoting <u>Arroyo</u>

<u>v. Sec'y of Health & Human Servs.</u>, 932 F.2d 82, 89 (1st Cir. 1991)).  The ALJ is entitled "to down-

play the weight afforded a treating physician's assessment of the nature and severity of an

impairment where . . . it is internally inconsistent or inconsistent with other evidence in the

record including treatment notes and evaluations by examining and nonexamining physicians."

<u>Arruda</u>, 314 F. Supp. 2d at 72.  "Inconsistencies between a treating physician's opinion and

other evidence in the record are for the ALJ to resolve."  <u>Lee v. Astrue</u>, Civil Action No.

10-10708-DJC, 2011 WL 2748463, at *11 (D. Mass. July 14, 2011) (slip op.).

"Where controlling weight is not given to a treating source opinion, the ALJ considers an

array of factors to determine what weight to grant the opinion[.]"  <u>Bourinot</u>, 95 F. Supp. 3d at

175-76.  Those factors include "the length of the treatment relationship and the frequency of

examination, the nature and extent of the treatment relationship, the degree to which the

opinion can be supported by relevant evidence, and the consistency of the opinion with the record as a whole." Id. at 176. See also 20 C.F.R. § 404.1527(c)(2)-(6). However, the regulations do not require the ALJ to list these factors or "to expressly state how each factor was considered," as long as the ALJ "provide[s] 'good reasons' for the weight given to a treating source opinion." Bourinot, 95 F. Supp. 3d at 177 (quoting 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)).

<u>Failure to Adopt Dr. Pritchard's Opinion</u>

Arrington argues that under the treating source rule, the ALJ should have given controlling weight to Dr. Pritchard's assessment of his functional limitations instead of Dr. Krishnamarthy's assessment of his physical RFC. (Pl. Mem. at 37-38). Dr. Pritchard met with Arrington on September 22, 2003 to perform an independent medical evaluation based on an examination of the plaintiff's left lower extremity. (Tr. 869-75). In his report of the evaluation, Dr. Pritchard stated that the plaintiff retained the capacity to perform sedentary work although he "qualifies for a minimum 8% whole body impairment as a result of his left knee injuries and subsequent surgeries." (Tr. 873). Dr. Pritchard also stated that Arrington would require total knee replacement in the future. (Tr. 875). However, he recommended that in the meantime, "the patient be given access to a[n] exercise gym on a permanent basis where he could exercise routinely to maintain strength of the supporting muscles of both of his lower extremities." (Id.).

As an initial matter, Dr. Pritchard did not find that the plaintiff was unable to engage "in any substantial gainful activity," so his opinion would not support Arrington's claim in any event. In addition, Dr. Pritchard's evaluation of the plaintiff occurred approximately 3½ years prior to the relevant time period, at a point when Arrington was determined not to be disabled

under the Social Security Act.  See Arrington, 358 Fed. Appx. at 91-92 (affirming ALJ's conclusion that Arrington had not been under a disability from October 6, 2002 through March 10, 2007). Nothing in his report suggests that his opinions were relevant to the question whether the plaintiff was disabled during the period under review.  Finally, the ALJ's failure to discuss Dr. Pritchard's opinion was based on substantial evidence.  The record establishes that Dr. Pritchard was an independent medical examiner rather than a treating physician.  (Tr. 869-75). Therefore, the ALJ was not required to give controlling weight to his opinions or even provide good reasons for failing to adopt them.

### Failure to Adopt Dr. Kelman's Opinion

This court also finds that the ALJ's decision to adopt Dr. Krishnamurthy's opinion over the opinion of Dr. Kelman was not in error.  As described above, Dr. Kelman was Arrington's treating orthopedist.  On July 9, 2007, shortly after the expiration of Arrington's date last insured, Dr. Kelman reported that "[t]he [plaintiff] may work with restrictions of sedentary work alternating with ambulatory status 1:1; no climbing, squatting, kneeling, bending, or stooping." (Tr. 547).  Dr. Kelman made the same statements in subsequent reports, including reports that were generated in September 2007 and October 2007.  (Tr. 556, 560, 566, 570, 574).  However, in November 2010, following an arthroscopy of Arrington's left knee, Dr. Kelman completed a Medical Source Statement in which he opined that Arrington could still perform sedentary work with an option to alternate between sitting and standing or walking, but that he could also lift and carry up to 50 pounds frequently and had no restrictions on his ability to perform postural activities such as bending, stooping and kneeling.  (Tr. 1111-14).

In his written decision, the ALJ described Dr. Kelman's treatment reports in detail, including Dr. Kelman's assessments of Arrington's physical abilities.  (Dec. 8-11; Tr. 21-24).  The ALJ explained that he had given "some weight" to Dr. Kelman's opinion.  (Dec. 12; Tr. 25).  However, as the ALJ further explained:

> I give some weight to the assessments of Dr. Kelman.  In July and October 2007, he limited claimant to sedentary work with no climbing, squatting, kneeling, bending or stooping.  While I have given weight to the assessment that the claimant was limited to work which did not require more than 2 hours standing over an 8 hour day, the evidence does not support a total restriction against climbing, squatting, kneeling, bending or stooping.  Dr. Kelman's records show that the claimant was able to semi-squat and arise, but with left knee pain.  There is no objective finding to support a total inability to climb stairs, squat, kneel, bend or stoop.  In fact, in a [RFC] assessment completed in November 2010, when the claimant's left knee was progressively worsening, Dr. Kelman did not include any postural limitations.

(Dec. 12-13; Tr. 25-26 (citations omitted)).  Consequently, the ALJ credited Dr. Kelman's assessment that Arrington could sit for 6 hours over an 8-hour work day and stand and/or walk for 2 hours over an 8-hour workday, as required to perform sedentary work, but did not otherwise adopt Dr. Kelman's opinion regarding Arrington's RFC.  (See Dec. 6; Tr. 19).  Instead, the ALJ adopted Dr. Krishnamurthy's opinion, as modified to preclude concentrated exposure to hazards rather than moderate exposure to hazards.  (Dec. 12-13; Tr. 25-26).

The ALJ's decision complies with the treating physician rule.  As described above, the ALJ provided specific reasons as to why he chose to credit Dr. Krishnamurthy's opinion over the opinion of Dr. Kelman.  This court finds that those reasons are supported by substantial evidence.  As the ALJ noted, Dr. Kelman's records confirm that in early July 2007, shortly after the expiration of Arrington's insured status, the plaintiff was able to semi-squat and arise, but with left knee pain.  (Tr. 546).  Accordingly, Dr. Kelman's suggestion that Arrington was

precluded from any squatting was inconsistent with his own findings.  Dr. Kelman's treatment

records also support the ALJ's conclusion that the objective findings did not establish a total

inability to climb stairs or perform other postural maneuvers.  In particular, during his July 9,

2007 examination of the plaintiff, Dr. Kelman found that Arrington could walk with a slight limp

and arise on his heels and toes without difficulty.  (Id.).  He further reported the results of his

examination as follows:

> Inspection of the left lower extremity demonstrates slight quadriceps
> atrophy.  The left knee demonstrates a slight effusion.  The surgical
> incision is well-healed.  The patient can actively straight-leg raise without
> extensor lag.  There is no instability to anterior/posterior or varus/valgus
> manual stress testing.  Pivot shift test is negative.  Range of motion is full.
> Palpation about the left knee demonstrates no medial or lateral joint line
> tenderness.  McMurray and Apley grind tests are negative.  Thessaly test
> is negative.
>
> The bilateral calves are soft and non-tender.
>
> The neurovascular examination (including sensory, motor, and reflex
> testing) is intact and equal to both lower extremities.

(Tr. 546-47).  This evidence supports the ALJ's conclusion that Arrington's impairments did not

preclude him from occasionally climbing, balancing, stooping, kneeling, crouching or crawling.

The ALJ's decision to give only "some weight" to Dr. Kelman's opinion is further

supported by Dr. Kelman's November 2010 Medical Source Statement.  The plaintiff claims that

by that time, his left knee impairment had gotten progressively worse.  (Pl. Mem. at 35).

Nevertheless, Dr. Kelman determined that Arrington had no postural limitations and no

restrictions on his capacity to lift and carry items weighing up to 50 pounds.  (Tr. 1112-13).

Under the Social Security regulations, the ALJ is entitled "to downplay the weight afforded a

treating physician's assessment of the nature and severity of an impairment where, as here, it is

internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians." <u>Arruda</u>, 314 F. Supp.2d at 72. Accordingly, the ALJ's decision regarding the weight given to the opinions of the treating and non-treating sources must be upheld on appeal.

<u>Failure to Re-Contact Dr. Kelman</u>

This court also finds that there is no merit to the plaintiff's assertion that the ALJ was required to re-contact Dr. Kelman in order to seek additional information regarding Arrington's postural limitations. "Effective March 26, 2012, the regulations governing an ALJ's 'duty' to recontact a medical source . . . changed." <u>Borgsmiller v. Astrue</u>, 499 F. App'x 812, 815 n.4 (10th Cir. 2012). Under the regulations that now control, and which controlled at the time the ALJ rendered his decision in this case, the ALJ has the option of re-contacting a treating physician or other medical source if the evidence in the record is insufficient to make a determination as to whether the claimant is disabled or the ALJ is unable to resolve inconsistencies in the record. 20 C.F.R. § 404.1520b. Alternatively, however, the ALJ may seek to resolve any inconsistency or insufficiency by requesting additional records, asking the claimant to undergo a consultative examination or asking the claimant or others for more information. <u>Id.</u> The regulations do not require the ALJ to obtain the necessary information by re-contacting a treating source. <u>Id.</u>

In the present case, the ALJ found that "[t]here [were] inconsistent opinions regarding the claimant's ability to perform postural maneuvers." (<u>See</u> Dec. 13; Tr. 26). Nevertheless, he was able to weigh the available evidence and reach a determination about Arrington's disability claim without the need to obtain additional information. Under the regulations, he was not required to take further action. <u>See</u> 20 C.F.R. § 404.1520b (explaining that the Commissioner

"may need to take additional actions" if the evidence in the record is insufficient or inconsistent, but that in the case of inconsistencies, the Commissioner "will weigh the relevant evidence and see whether [she] can determine whether [the claimant is] disabled based on the evidence we have").  Even if the ALJ had been unable to resolve the inconsistencies in the opinion evidence, he would have had the option of seeking additional information from a number of different sources, and would not have been required to re-contact Dr. Kelman.  See id. (explaining that Commissioner "will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section[,]" but retains the discretion to determine which actions to take).  Accordingly, his failure to do so did not amount to reversible error.

### 4.      Arrington's Challenge to the Step 5 Analysis

Finally, Arrington challenges the ALJ's decision at step five in the sequential analysis.  At this step in the evaluation process, the ALJ relied on the VE's testimony to conclude that through the date last insured, there were a significant number of jobs in the national economy that could be performed by an individual with Arrington's age, education, work experience and RFC, and that Arrington was capable of making a successful adjustment to other work.  (Dec. 14-15; Tr. 27-28).  As the ALJ stated in his decision:

> Through the date last insured, if the claimant had the [RFC] to perform
> the full range of light work, a finding of "not disabled" would be directed
> by Medical-Vocational Rule 202.21.  However, the claimant's ability to
> perform all or substantially all of the requirements of this level of work
> was impeded by additional limitations.  To determine the extent to which
> these limitations erode the unskilled light occupational base, through the
> date last insured, I asked the [VE] whether jobs existed in the national
> economy for an individual with the claimant's age, education, work
> experience, and [RFC].  The [VE] testified that given all of these factors
> the individual would have been able to perform the requirements of

representative unskilled, sedentary occupations such as a surveillance system monitor (DOT 379.367-010), with 2,070 jobs in the Massachusetts economy and 990,000 jobs in the national economy; a food order clerk (DOT 209.567-014), with 400 jobs in the Massachusetts economy and 276,000 jobs in the national economy; and a circuit board inspector (DOT 726.684-054), with 695 jobs in the Massachusetts economy and 473,000 jobs in the national economy.

(Dec. 14; Tr. 27).  Arrington argues that the ALJ's decision on this matter was not supported by substantial evidence because the ALJ erred in adopting Dr. Krishnamurthy's assessment of his RFC, failed to determine whether Arrington had transferable job skills that would enable him to perform semi-skilled work, and failed to include a sit/stand option and limitations on the claimant's mental functioning in the RFC that he presented to the VE at the hearing.  (Pl. Mem. at 38-48).  Additionally, Arrington challenges the VE's characterization of a surveillance system monitor and a circuit board inspector as unskilled, as well as the description of the surveillance system monitor and food order clerk positions as sedentary, and he disputes the VE's testimony regarding the number of surveillance system monitor jobs that are available in the national economy.  (Id. at 48-51).  Finally, Arrington argues that the ALJ should have found him disabled per se under the Medical-Vocational Rules.  (See id. at 52).  This court finds that none of the plaintiff's arguments are persuasive.

### Arrington's Challenge to the RFC Presented to the VE

The plaintiff first argues that the ALJ's finding at step 5 was not supported by substantial evidence because it was based on a hypothetical question that did not accurately describe the claimant's RFC.  "The opinion of a vocational expert that a Social Security claimant can perform certain jobs qualifies as substantial evidence at the fifth step of the analysis."  Sousa v. Astrue, 783 F. Supp.2d 226, 235 (D. Mass. 2011).  "In order to be substantial evidence, however, the

opinion of the vocational expert must be in response to a hypothetical that accurately describes the claimant's limitations." Id. In this case, the ALJ relied on the VE's response to a hypothetical question that included the RFC set forth in the ALJ's written decision. (See Tr. 100-01). Arrington has not shown that his conduct in this regard was erroneous.

The plaintiff contends that it was improper for the ALJ to rely on Dr. Krishnamurthy's assessment of his RFC because it conflicts with other evidence contained in the record. (Pl. Mem. at 38-39). As described above, however, the responsibility for resolving such conflicts rests with the ALJ. Teague, 151 F. Supp.3d at 226. Moreover, to the extent Arrington's argument is based on Dr. Pritchard's 2003 independent medical evaluation or on evidence that was generated years after the date last insured, he has not shown why such evidence was relevant to the ALJ's analysis. To the extent his argument is based on the ALJ's assessment of his credibility or the ALJ's decision to adopt Dr. Krishnamurthy's opinion over the opinion of Dr. Kelman, it is unpersuasive for the reasons described above.

This court also finds that the ALJ committed no error by failing to incorporate any mental limitations into his assessment of Arrington's RFC. As the ALJ explained at step two of his analysis, during the hearing, the plaintiff testified that he had been depressed since June of 2007, was receiving counseling at the VA and had trouble concentrating. (Dec. 5-6; Tr. 19; see also Tr. 93-95). However, the only record reflecting his mental status during the relevant time period consisted of a two-question depression screening, which was administered by a VA nurse on April 12, 2007 and showed negative results. (Dec. 5-6; Tr. 18-19; see also Tr. 828). As a result, Arrington has not established the presence of a severe mental impairment during the

time period from March 11, 2007 through his date last insured, and there was no basis for

including any mental limitations in the plaintiff's RFC.[7]

With respect to the plaintiff's claim that the ALJ should have included a sit/stand option

in the RFC, this court finds that the failure to do so was not erroneous.  As discussed supra, this

court has found that the ALJ's decision to adopt Dr. Krishnamurthy's assessment of Arrington's

RFC was supported by substantial evidence.  That assessment did not include the need for a

sit/stand option.[8]  (See Tr. 918-25).  Furthermore, while the ALJ in Florida found that Arrington

required a sit/stand option that would enable him to "alternate sitting (of [no] more than 45

minutes at a time) and standing (of no more than 15 minutes at a time)," the ALJ in this case

had no obligation to adopt that finding.  (See Pl. Mem. at 43 (quoting Tr. 134)).  "[W]hen a

claimant files a new application covering a new time frame, the issues (including RFC) are to be

examined de novo."  Frost v. Barnhart, No. 03-215-P-H, 2004 WL 1529286, at *3 (D. Me. May 7,

2004).  See also Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 476 (4th Cir. 1999) ("The

[Social Security Administration] treats a claimant's second or successive application for

disability benefits as a claim apart from those earlier filed, at least to the extent that the most

---

[7]  Because there was substantial evidence to support the ALJ's finding that Arrington had no severe mental impairments, the plaintiff's argument that "[t]he surveillance system monitor job involve[s] level-three reasoning" does not undermine the ALJ's decision that he could perform that job.  (See Pl. Mem. at 46).

[8]  Although the ALJ provided no specific explanation as to why he did not adopt Dr. Kelman's opinion that Arrington required "sedentary work alternating with ambulatory status 1:1" (Tr. 547), this court finds that any error was harmless because the ALJ gave good reasons for adopting Dr. Krishnamurthy's RFC assessment over the opinion of Dr. Kelman, and Dr. Krishnamurthy included no such limitation.  See MacDougall v. Astrue, No. 2:10-cv-400-GZS, 2011 WL 4566268, at *7 (D. Me. Sept. 29, 2011) (finding that ALJ's failure to consider State agency consultants' opinions that claimant required a sit/stand option was harmless because other substantial evidence supported ALJ's finding of RFC without such an option), aff'd, 2011 WL 5024456 (D. Me. Oct. 20, 2011).

recent application alleges a previously unadjudicated period of disability"). The decision in

Florida concerned the time period from October 6, 2002 through March 10, 2007. (See Tr.

138). Hence, the ALJ acted properly by conducting a new assessment of Arrington's RFC.

**Transferability of Job Skills**

Next, Arrington contends that the ALJ committed reversible error by assuming that the

plaintiff had transferable skills from his prior jobs that would enable him to perform semi-

skilled work. (Pl. Mem. at 40, 51-52). However, this argument reflects a misreading of the ALJ's

decision. In connection with his decision at step five, the ALJ found that "[t]ransferability of job

skills is not material to the determination of disability because using the Medical-Vocational

Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the

claimant has transferable job skills." (Dec. Finding #9; Tr. 27 (citations omitted)). Thus, the ALJ

did not assume that the plaintiff had transferable job skills. Instead, he found it unnecessary to

address that issue at all.

Even if the ALJ had made such an assumption, Arrington would still not be entitled to

relief. As described above, the ALJ relied on the VE's testimony that Arrington was capable of

performing "the requirements of representative unskilled, sedentary occupations" such as

those of a surveillance system monitor, food order clerk and circuit board inspector. (Dec. 14;

Tr. 27). Because the ALJ based his decision on Arrington's ability to perform unskilled work, any

assumption that he possessed transferable skills would have been harmless. See Scarafone v.

Colvin, Civil Action No. 13-10477-RWZ, 2015 WL 71490, at *5 (D. Mass. Jan. 6, 2015) (finding

that any alleged error by VE in determining transferable skills was harmless where VE found

that plaintiff could perform unskilled jobs).

## Testimony Regarding Availability of Other Jobs

The plaintiff also challenges the reliability of the VE's testimony that there were other jobs in the national economy that Arrington could perform.  With respect to the job of a surveillance system monitor, the plaintiff argues that the position is not sedentary, and that it no longer exists in significant numbers in the national economy.  (Pl. Mem. at 48-49).  He also argues that the job of a food order clerk involves a significant amount of standing, which requires the ability to perform work at the light level of exertion, and that the job of a circuit board inspector is a semi-skilled position rather than an unskilled position.  (Id. at 50-51).

Again, the plaintiff's arguments are not sufficient to warrant reversal or a remand of this case for further administrative proceedings.  The Dictionary of Occupational Titles establishes that the job of a food order clerk (DOT 209.567-014) is a sedentary occupation that involves "sitting most of the time, but may involve walking or standing for brief periods of time."  Dictionary of Occupational Titles 209.567-014, 1991 WL 671794 (1991).  Because there are 276,000 food order clerk positions available nationwide, this job alone is sufficient to satisfy the Commissioner's burden at step five of the disability analysis.  See Vining v. Astrue, 720 F. Supp.2d 126, 137 (D. Me. 2010) ("The figure of 11,000 jobs nationwide is in line with what courts have held to be a 'significant' number for purposes of [the] Step 5 analysis"); Brown v. Barnhart, No. 03-44-B-W, 2004 WL 413305, at *5-6 (D. Me. Mar. 3, 2004) (noting that "[a] single occupation is sufficient to meet the Commissioner's burden" at step five, and finding that the existence of more than 150,000 surveillance system monitor jobs nationally was "sufficient to meet the 'significant number' requirement), adopted by 2004 WL 1572695 (D. Me. Apr. 5, 2004) and aff'd, 126 Fed. Appx. 495 (1st Cir. 2005).  Accordingly, even if this court were to find

that Arrington's remaining challenges to the VE's testimony had merit, the record does not support his assertion that the ALJ erred in finding that he can perform work which exists in significant numbers in the national economy.

### Application of the Medical-Vocational Guidelines

Finally, the plaintiff suggests that the ALJ erred by failing to find that he was disabled under the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grid").  Thus, the plaintiff contends that he was 54 years old at the time of his June 10, 2014 hearing before the ALJ, and that an individual age 50 or older who is limited to a full range of sedentary work and has no transferable skills is deemed to be disabled under the Grid.  (See Pl. Mem. at 52).  In this case, however, Arrington was required to demonstrate that he was disabled by June 30, 2007, when he was 47 years old.  (See Tr. 312).  At that time, Arrington was considered a "younger" individual for purposes of his claim for SSDI.  See 20 C.F.R. § 404.1563(c) (defining "younger person" as a person under the age of 50).  Under the Grid, a younger individual who has graduated from high school and has no transferable skills is not considered disabled even if he is limited to no more than sedentary work.  20 C.F.R. Pt. 404. Subpt. P, App. 2 § 201.21.  Consequently, the ALJ's finding at step five of the disability analysis was based on substantial evidence as well.

### IV. CONCLUSION

For all the reasons detailed herein, the "Plaintiff's Motion for Order Reversing or Remanding the Decision of the Commissioner" (Docket No. 24) is DENIED and the "Defendant's Motion for Order Affirming the Decision of the Commissioner" (Docket No. 31) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge